# CARTER LEDYARD & MILBURN LLP
## Counselors at Law

Alan S. Lewis
Partner

Direct Dial: 212-238-8647
E-mail: lewis@clm.com

2 Wall Street
New York, NY 10005-2072

Tel (212) 732-3200
Fax (212) 732-3232

570 Lexington Avenue
New York, NY 10022-6856
(212) 371-2720

MEMO ENDORSED

March 19, 2020

> Defendant's application is denied without prejudice to renew before Magistrate Judge Court next week. Clerk of the Court requested to terminate the motion (doc. 76).
>
> SO ORDERED:
> Dated: March 20, 2020
>
> HON. NELSON S. ROMAN
> UNITED STATES DISTRICT JUDGE

FILED: 3/20/2020

**VIA ECF**

The Honorable Nelson S. Roman
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:   *United States v. Jacob Rosner*, Ind. No. 19-CR-497-04

Dear Judge Roman:

I represent Jacob Rosner ("Jacob"). I write to report that the parties have agreed on the conditions under which Jacob would be released on bail, and to request that you order Jacob to be produced for that purpose, as soon as that can be accomplished. The proposed, agreed-upon conditions are described below, following a brief description of the relevant background.

### Background

Jacob was arrested on December 27, 2018. There was no bail hearing at that time, as Jacob's then counsel elected to defer a bail application until a later date. Such application was made on March 16, 2019, before Magistrate Judge Lisa M. Smith, after which Judge Smith ordered detention. The government, in then seeking that detention, emphasized a number of factors that, as described below, have since changed. For example, the government criticized the bail conditions that had been proposed, including that Jacob reside with the rabbi for the Westchester County jail, a person to whom Judge Smith doubted that Jacob "would have sufficient allegiance." The government also expressed that there would be a lack of "moral suasion" in the security component of the proposed bail terms because that security would have been provided by a person with whom Jacob had no relationship. Finally, the government, while recognizing that Jacob was not a leader of the alleged conspiracy, expressed concern about Jacob being released *with* his co-defendants.

The combination of conditions that resulted in Jacob's detention have since changed significantly, as the parties both recognize. First, Jacob has now been jailed for almost 15 months – a long period which, depending on Jacob's ultimate sentence if convicted, may be

9394189.3

as long as the sentence he might receive. Second, during the nearly 15 months that he has been detained, Jacob has developed very meaningful relationships with many of his relatives who live in New York – paternal grandparents, aunts, uncles, cousins and other local family members. It is these family members with whom Jacob would reside and who would sign Jacob's bond and secure that bond with their property. Bail conditions that involve these relatives provide the moral suasion to compel Jacob's compliance, which Judge Smith found lacking in Jacob's brief acquaintance with Rabbi Horowitz nearly a year ago.

The government recognizes that the conditions have changed, and consents to Jacob's release under the following terms:

A bond in the amount of $1 million, to be signed by Jacob and four adults who are either related to Jacob or are otherwise close to him and his family. The bond would be secured by the equity in two homes – that of Jacob's great-grandparents, Joshua and Rachel Rosner, and of Jacob's paternal uncle and aunt, Ezriel and Chana Rosner. Jacob would also live with Ezriel and Chana Rosner at their home at 2 Rhonda Lane in Airmont, New York. The first property that would secure bail, Jacob's great-grandparents' home, is located at 31 Jackson Avenue in Spring Valley, New York and is their primary residence. The second property that would secure Jacob's bail, the home owned by Jacob's aunt and uncle in Airmont, New York, is their primary residence. Four persons would co-sign the bond, including three of Jacob's uncles: Ezriel Rosner (with whom Jacob would live), Naftoli Iliovits and Motel Teitelbaum. A close family friend, Aron Goldberger, would also sign the bond.

Ezriel Rosner, with whom Jacob would live, is employed as a scribe of religious texts and works out of his home. Jacob would be allowed to leave Ezriel's home for medical appointments, to meet with his counsel and to attend court appearances. He would also be permitted to attend religious observances at a synagogue (Congregation Tehillah L'Dovid, located at 1 Larissa Court in Airmont, New York), but *only* if the synagogue is able to convene services, consistent with public health directives to be issued in the context of the ongoing COVID-19 epidemic.

Jacob would not be permitted to communicate with any person currently or formerly employed or associated with the Lev Tahor religious group, including his co-defendants and alleged co-conspirators, except when his counsel participates in such communications.[1] The bail conditions would also prohibit Jacob from communicating with the two persons who are the alleged victims of the crimes charged. Jacob would be permitted access to one telephone that will be approved by Pretrial Services to make and receive calls to and from phone numbers agreed to by his counsel and the government, and would be prohibited from using cell phones or internet connected devices in the household, except for the purposes directly related to his case, such as communications by email with counsel and review of court documents and legal authorities on the computer. The government would be allowed to enter

---

[1] One of the co-defendants, Mayer Rosner, is Jacob's father, and under these proposed conditions, Jacob would be permitted to speak with his father if counsel were present for those communications.

9394189.3

the residence to search for prohibited electronic devices, upon reasonable suspicion. Finally, Jacob would be subject to electronic monitoring.

The COVID-19 situation may cause the process of interviewing co-signers, approving them, and posting security for the bond to take somewhat longer than it usually does, and therefore, we respectfully request that Jacob be released with the conditions relating to the signing of the bond and securing it with property to be effectuated within three weeks.

Respectfully, the conditions proposed are more than adequate. Jacob does not have the incentive, inclination or ability to flee. Even if convicted of the charges, the 15 months during which Jacob has been incarcerated likely represent most or all of the prison sentence he might receive if convicted. He simply has no rational incentive to flee to avoid serving the sentence that he has mostly or entirely already served in advance of any conviction. Jacob also understands that if he were to flee, he would subject himself to substantial additional penalties, likely longer in duration that any small period of additional incarceration he might receive if sentenced on the indictment.

Respectfully, the proposed conditions also create "moral suasion" that would further encourage Jacob's compliance with the conditions of his release. Jacob would not willingly cause any harm to his family and friends who are signing and/or securing his bond, which would further ensure Jacob's compliance with the conditions.

Jacob is a 21-year-old U.S. citizen, with relatively limited additional exposure, no prior criminal history, and a large local family to which he has become very close over the last year and who he would not disappoint or harm. Respectfully, his detention should not continue, and we request that you order Jacob produced so that he can be released on the above-described terms.

In light of the parties' agreement on the proposed conditions and in light of the ongoing COVID-19 epidemic, the parties agree that the proposed conditions of release may be so-ordered and effectuated, without the presence of counsel at a formal hearing.

Respectfully submitted,

/s/ Alan S. Lewis

Alan S. Lewis

ASL:bp

9394189.3